UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KATHLEEN STUART,

                Plaintiff,

           -against-

CAROLYN W. COLVIN, *Acting Commissioner
of Social Security*,

                Defendant.
-------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
14-CV-4965 (JMA)

**FILED**
**CLERK**

8/19/2016 1:11 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Christopher J. Bowes
54 Cobblestone Drive
Shoreham, New York 11786
    *Attorney for Plaintiff*

Vincent Lipari, Assistant United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

      Plaintiff Kathleen Stuart challenges the decision of the Acting Commissioner of Social Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons explained herein, plaintiff's motion for judgment on the pleadings is GRANTED, and defendant's cross-motion is DENIED. The case is remanded for further proceedings consistent with this Memorandum and Order.

1

## I. BACKGROUND

### A. <u>Procedural History</u>

On February 3, 2012, plaintiff filed an application for social security disability insurance benefits ("SSDI") under Title II of the Social Security Act (the "Act"), alleging disability since December 2009. (Administrative Transcript ("Tr.") 123, ECF No. 17.) She alleged disability for several reasons, including the combined effects of celiac disease, colitis, fibromyalgia, and Epstein Barr virus. (Tr. 137.) Plaintiff's date last insured ("DLI") was June 30, 2011.[1] (Tr. 16, 134.)

In April 2012, plaintiff's application for SSDI was denied on initial review. (Tr. 68−71.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). In March 2013, the ALJ held a hearing at which plaintiff testified, represented by counsel. (Tr. 42−46.) The ALJ issued a decision, denying plaintiff's claim for benefits, on March 25, 2013. (Tr. 11−22.) The Appeals Council denied plaintiff's request for review in June 2014. This appeal followed.

### B. <u>Factual Background</u>

In light of the decision to remand this case for further proceedings, I recount only the evidence relevant to that determination. In this section, I address the plaintiff's testimony and the evidence in the record regarding her earnings. Further below, I address the evidence relevant to plaintiff's arguments about her additional submissions to the Appeals Council and the ALJ's consideration of her pain treatment.

*1. Testimonial Evidence*

Plaintiff testified to the following facts during her March 2013 hearing before the ALJ. Plaintiff was born in 1978 and was approximately thirty-four years old when she applied for SSDI.

---

[1] For a disabled individual to qualify for SSDI, she must also be "insured for disability insurance benefits," as defined by the Act. See 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101, 404.120. Accordingly, to qualify for SSDI, plaintiff must show that her disability began on or before June 30, 2011.

2

(Tr. 44.) She attended college and worked in fast food establishments and retail locations throughout her time in college. (Tr. 46.) She obtained a master's degree in psychology and then worked as a child therapist from 2005 to 2007. (Tr. 47.) As a child therapist, she counseled abused children and children in the foster care system. (Tr. 47.) However, she took a medical leave from this position sometime during 2007. (Tr. 48.)

After plaintiff took her medical leave, she began working part-time at a retail job for about two years, from 2007 to 2009. (Tr. 48, 164.) At the hearing before the ALJ, plaintiff testified, "I had wanted to get back into the workforce, so I decided to just take a baby step and do a part-time retail store job." (Tr. 48.) According to plaintiff, the job was strictly on a part-time basis, to "get [her] feet wet . . . after going through a lot of health issues." (Tr. 48.) She has not worked since December 2009. (Tr. 49.)

At the hearing, plaintiff testified that the biggest issue preventing her from working was "pretty severe joint pain," which has made it consistently uncomfortable to sit, stand, and walk. (Tr. 50.) Generally, plaintiff has been diagnosed with fibromyalgia, although she has been tested for several other ailments and has tried various medications. (Tr. 50.) She has sought treatment from numerous rheumatologists, and sees her primary care physician and nurse practitioners for treatment. (Tr. 50.) Plaintiff described that she constantly experiences flu-like symptoms, such as body-aches, and joint pain, throughout her lower back, knees, hands, and shoulders. (Tr. 51.) She testified that these symptoms make it difficult to function generally because she feels exhausted and has difficulty carrying on basic activities, including walking, standing for long periods, and sitting. (Tr. 52.) Plaintiff testified that her immune system is weakened, and she frequently gets infections. (Tr. 52.)

Plaintiff also testified that she suffers from intestinal issues, including colitis and irritable bowel syndrome ("IBS"). (Tr. 56.) Plaintiff has changed her diet to control her intestinal symptoms. (Tr. 56.) Regarding her colitis condition, she claimed that her flare-ups, which occur without warning, posed the biggest issue for her because a flare-up is painful and necessitates close proximity to a bathroom. (Tr. 56−57.) She testified that when she has a flare-up, she loses weight and vitamins and becomes dehydrated. (Tr. 57.) She stated that she had to go to the emergency room several times for an IV because of electrolyte loss. (Tr. 58.) Because she takes medication for these issues and has changed her diet, she has been able to limit the frequency of these issues. She testified that she suffers a flare-up once or twice a year. (Tr. 57, 61.) She also testified that she experiences cramping pains, sometimes for over a week at a time, because of gastritis or stomach ulcers. (Tr. 62.)

When asked what prevented her from doing her previous job counseling children, plaintiff testified that the hardest part would be her absence for days at a time in a given month, especially when many of the children had been abandoned. (Tr. 60−61.) Specifically, she testified that either because of infections, flare-ups, or joint pain, she would have to miss work and would then feel guilty canceling appointments with the children. (Tr. 61.)

*2. Record Evidence About Plaintiff's Retail Position*

Plaintiff filled out a work history report in March 2012. (Tr. 163−70.) In that report, she listed her job as a part-time retail sales associate, from 2007 to 2009. (Tr. 163−64.) According to the report, she worked four hours per day, five days per week, and earned $9 per hour. (Tr. 164.) Based on these representations, her monthly wages for this position would have been $780 per month. (Pl.'s Mem. in Support of Cross-Mot. ("Pl.'s Mem.") at 20, ECF No. 14; Def.'s Reply Mem. in Support of Mot. ("Def.'s Reply") at 2, ECF No. 15.) In the same report, she also listed

that she had been a mental health therapist from 2005 to 2007, earning $40,000 per year. (Tr. 163, 165.)

However, two other reports in the transcript indicate different earnings information.[2] The first is an undated disability report. (Tr. 136−42.) According to this report, plaintiff worked in retail six hours per day, four days per week, and earned $9 per hour. (Tr. 138.) Based on this information, her monthly earnings would have been $936 per month. (Def.'s Reply at 3.) The second report is an undated work history report. (Tr. 143−51.) This report contains the same numbers for plaintiff's retail work: six hours per day, four days per week, at $9 per hour, for monthly earnings of $936.

The certified earnings record included in the transcript indicates plaintiff's earnings per year. (Tr. 124.) Although plaintiff worked as a child therapist from 2005 to 2007 and as a part-time retail associate from 2007 to 2009, it is unclear from the record when in 2007 she took her medical leave and when in 2007 she began her part-time retail work. Plaintiff's earnings for these years are as follows:

| Year | Yearly Earnings |
|------|-----------------|
| 2005 | $32,666.85 |
| 2006 | $37,516.36 |
| 2007 | $15,910.29 |
| 2008 | $2,434.50 |
| 2009 | $4,932.49 |

(Tr. 124.)

---

[2] I note that these two other reports are type-written, unsigned and undated, and contain information that varies from plaintiff's handwritten work history report from March 2012. (Tr. 163−70.) Plaintiff asserts that these two typed reports contain incorrect information. For example, these reports list that she worked as a child therapist from 2005 to 2005, rather than 2005 to 2007.

5

## C. The ALJ's Decision

The ALJ applied the five-step process required by the regulations, described below, and denied plaintiff's application for benefits, based on his conclusion that she was not disabled. Step four required the ALJ to determine whether plaintiff had the residual functional capacity ("RFC") to perform her "past relevant work." 20 C.F.R. § 404.1520(f).

At step four, the ALJ determined that through plaintiff's DLI, she "had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)." (Tr. 16.) The ALJ found that although her gastrointestinal and joint pains would somewhat limit her daily activities, they were not so severe as to preclude the performance of all work activities. (Tr. 21.) The ALJ found she could return to her past relevant work as a retail clerk. (Tr. 21.) Therefore, he concluded that she was not disabled through her DLI, June 30, 2011. (Tr. 21.)

## II. DISCUSSION

Plaintiff argues that the Commissioner's decision must be vacated and the case remanded for three reasons. First, plaintiff argues that the ALJ's determination that her part-time retail position constituted past relevant work was improper because that job could not be considered substantial gainful activity, or "SGA." Second, plaintiff contends that the Appeals Council erred when it refused to reconsider her case because the three MRIs she had submitted, though taken after her DLI, purportedly corroborated her complaints during the relevant period. Finally, plaintiff argues that the ALJ failed to consider plaintiff's need for narcotic pain medications to treat pain from her colitis and those medications' adverse side effects.

I conclude that this case should be remanded because the ALJ did not adequately explain his determination that plaintiff's part-time retail position constituted past relevant work to which she could return. In light of the conflicting evidence in the record, the ALJ is directed to explain

6

whether or not plaintiff's part-time work in retail can properly be considered past relevant work. The ALJ is also directed to further address the medical history relating to plaintiff's pain treatment in the ALJ's credibility determination. I reject plaintiff's argument regarding the evidence submitted to the Appeals Council.

**A. <u>Standard of Review</u>**

A district court may set aside the Commissioner's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." <u>Burgess v. Astrue</u>, 537 F.3d 117, 127 (2d Cir. 2008) (quoting <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000)). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). The district court does not determine <u>de</u> <u>novo</u> whether plaintiff is disabled. <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004). Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive." 42 U.S.C. § 405(g); <u>see also</u> <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." <u>Yancey</u>, 145 F.3d at 111. However, the court "may not properly 'affirm an administrative action on grounds different from those

considered by the agency.'" Burgess, 537 F.3d at 128 (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).

Generally, the claimant bears the burden of proving disability. Id. Under the Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 416.920(a)(4). The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess, 537 F.3d at 120 (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## B. Past Relevant Work

Plaintiff argues that when the ALJ determined that plaintiff could return to her "past relevant work," the ALJ based that decision on an erroneous finding that her part-time job as a retail sales clerk constituted SGA. Based on plaintiff's handwritten work history report and

8

earnings records, plaintiff asserts that her earnings per month for her retail work was below the threshold of SGA. The Commissioner counters that the ALJ, as factfinder, was entitled to determine which of the conflicting earnings reports were correct. Alternatively, the Commissioner contends that the regulatory threshold is only a guideline, creating a rebuttable presumption linked to earnings. I find that the ALJ erred in his conclusory determination that plaintiff's retail job constituted SGA.

As described above, at step four of the analysis, the ALJ determines whether the claimant is capable of performing her past relevant work. "Past relevant work" is work performed within the past fifteen years, or during the fifteen years prior to the date that disability must be established. 20 C.F.R. § 404.1560(b)(1). This work must have been "substantial gainful activity" and must have lasted long enough for the claimant to learn to do the job. Id.; see also 20 C.F.R. § 404.1565. Substantial gainful activity must be both "substantial"—that is, "work activity that involves doing significant physical or mental activities," 20 C.F.R. § 404.1572(a)—and "gainful," or work activity done for pay or profit. Id. § 404.1572(b). Work may be substantial, even if done on only a part-time basis. Id. § 404.1572(a); see also Figueroa-Plumey v. Astrue, 764 F. Supp. 2d 646, 650 (S.D.N.Y. 2011). Work is gainful "if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

In determining whether work constitutes SGA, the claimant's earnings are the "primary consideration." Id. § 404.1574(a)(1) ("Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity."); see also Figueroa-Plumey, 764 F. Supp. 2d at 650. Within the regulations are earnings guidelines, which "set a floor for earnings that presumptively constitute substantial gainful activity," but do not conclusively determine whether or not an employee has engaged in SGA. Fuentes v. Colvin, No. 13-CV-6201, 2015 WL 631969,

9

at *10 (W.D.N.Y. Feb. 13, 2015) (quoting Parker v. Astrue, No. 06-CV-1458, 2009 WL 3334341, at *3 (N.D.N.Y. Oct. 14, 2009)); see also 20 C.F.R. § 404.1574 ("[T]he fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity."); Surgeon v. Barnhart, No. 04-CV-4424, 2005 WL 1397172, at *4 (E.D.N.Y. June 14, 2005), aff'd sub nom. Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37 (2d Cir. 2006).  During the relevant years here, 2007 to 2009, the earnings necessary to trigger the presumption of SGA were $900 per month in 2007, $940 per month in 2008, and $980 per month in 2009.[3]  Program Operations Manual Systems (POMS) DI 10501.015, "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity" Table 2, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015.

In his decision, the ALJ concluded that plaintiff "was capable of performing her past relevant work as a retail clerk." (Tr. 21.)  At no point in the decision did the ALJ discuss plaintiff's earnings or whether her retail position constituted SGA.

Although the Commissioner argues that substantial evidence supports a finding that plaintiff's earnings from her retail position met the SGA threshold, the record contains conflicting reports of plaintiff's earnings.  In her handwritten work history report, plaintiff claims that, between 2005 and 2007, she worked as a part-time retail associate four hours per day, five days per week, at a rate of $9 per hour. (Tr. 163–64.)  Based on these facts, her monthly earnings would have been $780 per month—at least $120 below the threshold for SGA for all three years she worked in the position.[4]  However, the Commissioner points to two undated, unsigned, typed

---

[3]  The parties appear to agree that if plaintiff met the earnings threshold for any one of these years, the presumption of SGA has been triggered.

[4]  Because the threshold was $940 per month in 2008 and $980 per month in 2009, during those years her earnings would fall $160 and $200 below the guidelines respectively.

reports that place her monthly earnings above the 2007 threshold of $900 per month. (Tr. 136–42, 143–51.) Both this disability report and work history report state that plaintiff worked six hours per day, four days per week, at a rate of $9 per hour. (Tr. 138, 146.) Based on this information, plaintiff would have earned $936 per month. As noted above, these earnings would exceed the 2007 threshold, but would still place her below the presumptive levels for 2008 and 2009. Finally, plaintiff's certified earnings records indicate she made only $2,434.50 in 2008 and $4,932.49 in 2009. (Tr. 124.) Although these records indicate that she earned $15,910.29 in 2007, for at least part of that year, she still worked as a mental health therapist, earning $40,000 per year. (Tr. 124, 163, 165.)

The Commissioner contends that the ALJ was entitled to make a determination regarding the conflicting reports, but at no point did the ALJ acknowledge the discrepancies concerning plaintiff's earnings. Given the evidence in the record and the lack of explanation in the ALJ's decision, remand is warranted. First, nothing in the record indicates when in 2007 plaintiff took leave from her employment as a child therapist and then resumed employment, part-time, in her retail position. Plaintiff's much higher income in 2007, compared to the subsequent two years, may be explained by plaintiff's partial earnings from her previous job as a mental health therapist. Furthermore, the numbers provided in plaintiff's certified earnings records do not support a finding that she earned at SGA levels during 2008 and 2009 when her yearly earnings were $2,434.50 and $4,932.49 in 2008 and 2009 respectively. The ALJ erred when he did not address whether plaintiff's retail job constituted SGA, despite plaintiff's conflicting earnings reports and her low actual earnings. See Richardson v. Colvin, No. 15-CV-6276, 2016 WL 3179902, at *11–12 (W.D.N.Y. June 8, 2016) (remanding the case for the ALJ to provide specific findings because the plaintiff's actual earnings were well below SGA levels but an unsigned document stated plaintiff

worked forty hours per week for $7.35 per hour, placing her above the earnings threshold). Therefore, because the ALJ did not adequately explain his SGA finding, the case should be remanded.

Alternatively, the Commissioner argues that plaintiff's retail employment could properly be considered SGA, even though she did not meet the earnings threshold. However, as noted above, the ALJ did not discuss the earnings thresholds. Consequently, the ALJ also did not address whether plaintiff's retail position constituted SGA, even if her earnings fell below SGA levels. Thus, I will not affirm the ALJ's decision on this ground. See Burgess, 537 F.3d at 128 ("[The Court] may not properly affirm an administrative action on grounds different from those considered by the agency." (quoting Melville, 198 F.3d at 52) (internal quotation marks omitted)).

Moreover, even if I were to entertain the Commissioner's alternative argument here, the record does not support a finding that the retail position constituted SGA. First, several of the Commissioner's cited cases involve claimants whose earnings exceeded the earnings threshold for SGA. Second, although the Commissioner did cite cases in which the plaintiff's earnings fell slightly below the guidelines, in those cases, the courts found that the plaintiff chose to work fewer hours or that the plaintiff was clearly capable of performing the job at SGA levels. Compare Fuentes, 2015 WL 631969, at *10–11 & n.7 (holding that plaintiff's earnings as an office cleaner were sufficiently close to the earnings threshold to support a finding of SGA, because the record revealed that plaintiff had multiple jobs and thus he may have worked as a cleaner part-time because "it was not his primary employment") and Cook v. Astrue, No. 11-CV-696, 2012 WL 4356261, at *4 (M.D. Fla. Sept. 24, 2012) (finding that even though plaintiff's earnings "fell just below the guidelines," the plaintiff's job as a school bus driver constituted SGA when she worked an average thirty-five hours a week for over two years but her hours varied because the children

12

had field trips), with Phillips v. Astrue, 435 F. App'x 585, 588 (8th Cir. 2011) (remanding because the record did not show whether plaintiff's earnings were low because he chose to work only part-time), and Johnson v. Colvin, No. 11-CV-1710, 2013 WL 1293825, at *9 (E.D. Mo. Mar. 28, 2013) (remanding where record failed to show that plaintiff's low earnings as a substitute teacher were because of "his choice or some other reason").

The court's decision in Richardson v. Colvin is instructive. There, the court remanded the case because the ALJ failed to acknowledge that the plaintiff's earnings as a cafeteria attendant were far below the SGA thresholds. Richardson, 2016 WL 3179902, at *12. The plaintiff worked as a part-time cafeteria attendant for several years. Id. at 10. Her annual earnings varied but at most were $4,823. Id. The Commissioner argued that the plaintiff's cafeteria position qualified as SGA because plaintiff had chosen to work fewer hours for reasons completely unrelated to her disability, i.e., she reduced her hours to care for her son. Id. at 11. Although the Commissioner alleged that the evidence was sufficient to support a reasonable factfinder's conclusion that the cafeteria attendant position was SGA, the court remanded the case because "the ALJ did not actually make any findings that would support a determination that [plaintiff's] past work was SGA notwithstanding her low earnings." Id. at 12.

For similar reasons, remand is warranted here. Here, plaintiff seeks to rely on her handwritten and signed work history report, which places her earnings per month $120 below the threshold in 2007 and $200 below the threshold in 2009. The certified earnings record also indicates low actual earnings for the relevant years.[5] The record does not provide any explanation as to why plaintiff may not have worked more hours in her retail position. Rather, plaintiff testified

---

[5] As noted above, it is unclear when in 2007 plaintiff's position as a mental health therapist concluded and when plaintiff began her part-time work as a retail clerk. Therefore, it is unclear what portion of that year's earnings can be attributed to her retail position.

13

that the retail position was a "baby step" to rejoining the work force, potentially indicating she was unable to perform the job at SGA levels. That testimony was not developed any further at the hearing.

Even though the record contains conflicting reports, plaintiff may rely on her signed work history report and earnings records as support for her argument that her retail position was not performed at SGA levels. See id. at 11. Moreover, the ALJ made no specific findings as to these discrepancies or plaintiff's low earnings. Thus, it is unclear from the ALJ's decision whether he recognized a potential failure to earn at SGA levels or whether he considered that any failure to earn at such a level was a result of plaintiff's own choice. On remand, the ALJ should properly address whether plaintiff's retail position was performed at SGA levels and whether that job can be considered past relevant work.[6]

## C. Evidence Submitted to the Appeals Council

Plaintiff argues that the Appeals Council improperly discounted additional evidence that she submitted on appeal. Specifically, plaintiff indicates that three MRIs from May 2013, taken of her right shoulder, cervical spine, and lumbar spine, support her ongoing complaints of back and shoulder pain and support the theory that there has been degeneration over time. The Appeals Council rejected the MRIs as irrelevant to the period of disability and found that they would not have changed the ALJ's decision. The Commissioner argues that these submissions do not make the ALJ's decision contrary to the weight of the evidence. The Commissioner points out that the 2013 MRI of plaintiff's lumbar spine was unchanged from her October 2010 MRI, which the ALJ had considered in the record before him. As to the shoulder MRI, the Commissioner argues that it does not mention a degenerative process at all but refers to, inter alia, shoulder tears. Finally,

---

[6] Notably, because the ALJ did not proceed beyond step four of the analysis, neither the ALJ nor the parties have had the opportunity to opine on the merits of plaintiff's claim at step five.

the Commissioner asserts that the cervical MRI is not relevant because plaintiff did not complain of neck pain during the relevant period, and the medical records from the relevant period do not reference any cervical condition. I agree with the Commissioner that the Appeals Council did not err in its decision regarding this evidence.

Under the regulations, the Appeals Council will consider only "new and material evidence" and "only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If such evidence is submitted, the Appeals Council evaluates the entire record, including the new and material evidence, and "will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id.; see also 20 C.F.R. § 404.1470(b); Harris v. Astrue, 935 F. Supp. 2d 603, 609 (W.D.N.Y. 2013) ("Where a plaintiff submits additional evidence to the Appeals Council that was not assessed by the ALJ, the regulations require the Appeals Council to evaluate the evidence only if it relates to the period on or before the date of the ALJ's hearing decision and if it is new and material."), aff'd sub nom. Harris v. Colvin, 561 F. App'x 81 (2d Cir. 2014). Even if plaintiff submits evidence that relates to the time period at issue, remand is not warranted if "it does not add so much as to make the ALJ's decision contrary to the weight of the evidence." Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010).

The Appeals Council did not err in refusing to review plaintiff's case because, even assuming that the 2013 MRIs relate to the time period at issue, they would not make the ALJ's decision contrary to the weight of the evidence. As defendant indicates, the MRI of her lumbar spine noted that it was not significantly changed from her October 2010 MRI, which the ALJ did review. (Tr. 7.) Only her cervical spine MRI notes "multi-level degenerative changes." (Tr. 6.) However, there is no indication of when this condition began, and there is no record of a cervical

condition during the relevant period.  Thus, this additional evidence did not require the Appeals Council to review plaintiff's case.

**D. Consideration of Plaintiff's Pain Treatment**

Plaintiff argues that the ALJ discounted critical testimony in which plaintiff described her use of narcotic and opioid medications to alleviate painful cramping from her colitis condition. Plaintiff was prescribed fentanyl, 75 mcg, and ultram, 50 mg, which she claims caused drowsiness.[7]  (Tr. 161−62.)  When she visited the Mayo Clinic for pain management around April 2011, doctors advised her to enter into a comprehensive pain management program, with the hopes that she would discontinue her use of narcotic medications and thus eliminate their side effects. (Tr. 376−77.)  However, she was still using fentanyl and ultram during October and November 2011.  (Tr. 425−26.)  She reported that these medications did not completely relieve her pain but only made it more tolerable.  (Tr. 161.)  With respect to her medications, she testified, "I took myself off a few," including fentanyl, "because I didn't think that was healthy to be on long term." (Tr. 64.)

Plaintiff asserts that because the ALJ did not address the significance of these efforts to treat her pain and the medications' adverse effects on her ability to work, his decision should be vacated.  Defendant counters that remand is not required because the ALJ expressly recognized plaintiff's use of these medications, and plaintiff did not show how taking these medications caused limitations other than those the ALJ had already addressed.  I disagree with plaintiff's characterization that the ALJ completely discounted the pain from her colitis condition.  However,

---

[7] Plaintiff used a fentanyl patch, which is an opioid medication used to manage moderate to severe pain.  (Pl.'s Mem. at 2 & n.2.)  Plaintiff also took ultram four to six times per day.  (Id. at 2−3.)  Ultram is a narcotic-like pain reliever, which is used to manage moderate to severe pain.  (Id. at 2 n.1.)

16

on remand, the ALJ should generally address whether the longitudinal medical record affects his assessment of plaintiff's credibility.

When determining a claimant's RFC, the ALJ must take into account the claimant's subjective complaints of pain and other limitations, but he is not required to accept them without question. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Under the regulations, the ALJ may weigh such testimony under a two-step process: (1) the ALJ must decide whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [claimant's] symptoms"; and (2) if so, he must consider the extent to which such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(b)–(c); see also, Genier, 606 F.3d at 49. "A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988).

The regulations provide how the ALJ must evaluate symptoms, including pain. 20 C.F.R. § 404.1529(c)(3). Specifically, "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," and the ALJ must consider several factors in his evaluation of claimant's symptoms. Id. As one factor in a list of non-exclusive considerations, the ALJ considers "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." Id. § 404.1529(c)(3)(iv). The other factors include plaintiff's daily activities; the location, duration, frequency, and intensity of plaintiff's pain; any precipitating and aggravating factors; and other treatments or measures taken to alleviate pain. Id. § 404.1529(c)(3)(i)−(v). However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful

17

employment." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). In assessing a claimant's credibility, specifically with respect to pain, a Social Security Ruling provides that:

> a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

Dailey v. Barnhart, 277 F. Supp. 2d 226, 239 (W.D.N.Y. 2003) (quoting SSR 96-7, 1996 WL 374186, at *7 (July 2, 1996)).

Although plaintiff argues that the ALJ discounted the pain associated with her colitis condition, that characterization of the ALJ's decision is not accurate. In his decision, the ALJ wrote that plaintiff "has episodic flare-ups of abdominal pain and multiple bowel movements of diarrhea, which she stated occurred once or twice a year. <u>She occasionally has severe gastrointestinal symptoms that interfere with her ability to function on a daily basis and/or in the workplace</u>." (Tr. 21 (emphasis added).) Under the most reasonable reading, the ALJ is referring to the plaintiff's testimony at the hearing—in which she stated she experiences flare-ups "once or twice a year," (Tr. 56–57, 61–62)—and is also acknowledging her testimony that she experiences cramping pains and other gastrointestinal symptoms, even outside of a flare-up. (Tr. 61–62.) Therefore, I do not agree with plaintiff's contention that "[t]he ALJ improperly concluded that she only experienced these symptoms twice a year." (Pl.'s Mem. at 24.)

However, on remand, the ALJ should reassess his credibility determination, in light of plaintiff's long-standing and documented complaints of both gastrointestinal and joint pain. Plaintiff's complaints are reflected by both her doctors' medical reports and her consistent and

18

continuous use of pain medications. For several years, she has seen a number of doctors to treat her gastrointestinal and joint pains and has consistently taken ultram and fentanyl for her pain. She also pursued pain management at the Mayo Clinic in Florida around April 2011. The Commissioner's argument, that plaintiff did not identify additional restrictions imposed by her pain medications, does not excuse the ALJ's failure to properly evaluate plaintiff's credibility. See Dailey, 277 F. Supp. 2d at 239 (finding, pursuant to SSR 96-7p, that "plaintiff's credibility should actually be enhanced" because the plaintiff had attempted to treat her pain by visiting a variety of doctors, following the prescribed treatments, and considering experimental treatments).

In his decision, the ALJ generally recounted the medical records, including plaintiff's medications and her daily activities, but he did not discuss what effect, if any, her persistent efforts to mitigate her pain had upon his credibility assessment. The ALJ also noted plaintiff's testimony that "she has learned to control her symptoms with diet . . . . [and] has had these conditions for many years and worked in spite of her symptoms." (Tr. 21, see also tr. 57–58.) However, the ALJ did not explicitly address that plaintiff has consistently been prescribed pain medications and that she testified such medications did not completely alleviate her pain from her conditions. See Castellano v. Astrue, No. 07-CV-4608, 2008 WL 2951925, at *7 (S.D.N.Y. July 30, 2008) (remanding where the ALJ discredited the plaintiff's complaints about her pain without properly discussing the plaintiff's documented complaints of chronic back pain and the history of her pain treatment). Therefore, upon remand, the ALJ should further discuss plaintiff's course of treatment for her joint pain and her gastrointestinal pain. In addressing plaintiff's credibility, the ALJ should address plaintiff's pain complaints and the medications' adverse side effects.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is DENIED, and plaintiff's motion for judgment on the pleadings is GRANTED. The case is remanded for further proceedings. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: August 19, 2016
Central Islip, New York

                    /s/  (JMA)
                  JOAN M. AZRACK
                  UNITED STATES DISTRICT JUDGE